**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KENNETH MARK BURTON as the Administrator of
the Estate of FRANKLIN RAMOS SANCHEZ,
MADGA LILIANA MARTINEZ ACOSTA,
Individually and as m/n/g of F.N.R.M., an Infant, and
FRANCY TATIANA RAMOS MARTINEZ

               Plaintiff,

        -v-

UNITED STATES OF AMERICA, ANTHONY
BUSSANICH, M.D., ROBERT BEAUDOUIN, M.D.,
YSMAEL JOAQUIN, MLP, NURSE TERRANCE
THOMAS, OPERATIONS LIEUTENANT
KIMBERLY SHIVERS, OPERATIONAS
LIEUTENANT LORENZO BARRAZA, HOUSING
UNIT OFFICER QUENTIN HOLZENDORF,
HOUSING UNIT OFFICER GERALD CASTILLO,
HOUSING UNIT OFFICER SHAADIQ SHAKIR,
HOUSING UNIT OFFICER ROSALIND SILVIA,
SENIOR OFFICER WILSON SILVA, BOP JOHN
DOE SUPERFISOR 1, BOP JOHN DOE
SUPERVISOR 1, BOP JOHN DOE SUPERVISOR 2,
JOHN/JANE DOES and JOHN/JANE DOES Nos. 1-5,

             Defendants.

---

Case No. 18 CV 2039 (JHR)

**INDIVIDUAL DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR DISMISSAL UNDER
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
   *Attorney for the Individual Defendants*

BRANDON H. COWART
Assistant United States Attorney
- Of Counsel -

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

   A.  Allegations in the Second Amended Complaint ................................................. 3

   B.  Procedural History ............................................................................................. 5

ARGUMENT ........................................................................................................................... 6

   A.  Standard of Review ............................................................................................ 6

   B.  Plaintiffs' *Bivens* Claims Are Not Cognizable ................................................. 7

   C.  Plaintiffs Fail To State a *Bivens* Claim For Medical Deliberate Indifference ................... 12

   D.  The *Bivens* Claims Against the Medical Defendants Are
       Barred by the Doctrine of Qualified Immunity ................................................. 15

CONCLUSION ........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................... 6, 8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................... 6, 7

*Bivens v. Six Unknown Fed. Narcotics Agents,*
   403 U.S. 388 (1971) ............................................................................... 1, 8

*Bryant v. Wright,*
   451 F. App'x 12 (2d Cir. 2011) ................................................................. 13

*Carlson v. Green,*
   446 U.S. 14 (1980) ...................................................................................... 8

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir. 2002) ........................................................................ 7

*Choice v. Michalak,*
   21 CV 0060, 2022 WL 4079577 (N.D. Ill. Sept. 6, 2022) ........................... 9

*Cohen v. United States,*
   21 CV 10774, 2022 WL 16925984 (S.D.N.Y. Nov. 14, 2022) ................... 8, 9

*Cuoco v. Moritsugu,*
   222 F.3d 99 (2d Cir. 2000) .......................................................................... 9

*Darnell v. Pineiro,*
   849 F.3d 17 (2d Cir. 2017) .............................................................. 9, 10, 12

*Davis v. Passman,*
   442 U.S. 228 (1979) .................................................................................... 8

*DiFolco v. MSNBC Cable L.L.C.,*
   622 F.3d 104 (2d Cir. 2010) ........................................................................ 7

*Doninger v. Niehoff,*
   642 F.3d 334 (2d Cir. 2011) ............................................................... 15, 16

*Egbert v. Boule,*
   142 S. Ct. 1793 (2022) ...................................................................... passim

*Estelle v. Gamble,*
   429 U.S. 97 (1976) .................................................................................... 14

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ................................................................................. 9, 10, 12

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990) ........................................................................................ 6

*Gilles v. Repicky*,
  511 F.3d 239 (2d Cir. 2007) ..................................................................... 15, 16

*Gonzalez v. Sarreck*,
  08 CV 3661, 2011 WL 5051341 (S.D.N.Y. Oct. 24, 2011) .................................. 13

*Gottesfeld v. Anderson*,
  18 CV 10836, 2020 WL 1082590 (S.D.N.Y. Mar. 6, 2020) .................................. 14

*Hernandez v. United States*,
  939 F.3d 191 (2d Cir. 2019) ............................................................................ 6

*Hernandez v. Corizone Med. Dep't Staff,* ,
  14 CV 192, 2015 WL 273690 (S.D.N.Y. Jan. 22, 2015) ...................................... 13

*Hunter v. Bryant*,
  502 U.S. 224 (1991) ...................................................................................... 15

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995) ................................................................................ 7

*Irizarry v. Manhattan Corr. Ctr.*,
  No. 21-CV-5170 (LTS), 2021 WL 3668045 (S.D.N.Y. Aug. 17, 2021)...................... 9

*Johnson v. Santiago*,
  20 CV 6345, 2022 WL 3643591 (E.D.N.Y. Aug. 24, 2022)................................... 11

*Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*,
  742 F.3d 42 (2d Cir. 2014) .............................................................................. 7

*Komatsu v. United States*,
  21 CV 1838, 2023 WL 317326 (S.D.N.Y. Jan. 19, 2023)...................................... 8

*Laurent v. Borecky*,
  17 CV 3300, 2018 WL 2973386 (E.D.N.Y. June 12, 2018) .................................... 9

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ............................................................................ 6

*Martinez v. Simonetti*,
  202 F.3d 625 (2d Cir. 2000) .......................................................................... 15

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ......................................................................................... 15

*Morrison v. Nat'l Australia Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008) .............................................................................. 6

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ......................................................................................... 15

*Sabir v. Licon-Vitale*,
    20 CV 1552, 2022 WL 1291731 (D. Conn. Apr. 29, 2022) .................................. 11

*Schulte v. Bureau of Prisons*,
    20 CV 2795, 2022 WL 1468017 (S.D.N.Y. May 10, 2022) ................................... 11

*Tangreti v. Bachmann*,
    983 F.3d 609 (2d Cir. 2020) ............................................................................. 14

*Washington v. The City of New York*,
    10 CV 389, 2011 WL 566801 (S.D.N.Y. Feb. 15, 2011) ....................................... 12

*Wilson v. Layne*,
    526 U.S. 603 (1999) ......................................................................................... 15

*Ziglar v. Abbasi*,
    198 L. Ed. 2d 290 (June 19, 2017) ................................................................. 8, 9

**Statutes**

18 U.S.C. § 924 ..................................................................................................... 3

21 U.S.C. § 963 ..................................................................................................... 3

28 U.S.C. § 1346(b) .............................................................................................. 1

42 U.S.C. § 1983 ................................................................................................... 8

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 6

Defendants Anthony Bussanich ("Bussanich"), Robert Beaudouin ("Beaudouin"),

Ysmael Joaquin ("Joaquin"), Kimberly Shivers ("Shivers"), Lorenzo Barraza ("Barraza"),

Gerald Castillo ("Castillo"), Wilson Silva ("Silva"), and Quentin Holzendorf ("Holzendorf"), all

current or former employees of the Bureau of Prisons ("BOP") (together, the "Individual

Defendants"), respectfully submit their motion to dismiss the Second Amended Complaint

("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

This lawsuit arises from the death of Franklin Sanchez ("Sanchez"), a pretrial detainee,

while incarcerated at the Metropolitan Correctional Center in New York ("MCC"). Plaintiffs, the

Executor of Sanchez's estate and members of Sanchez's family, have brought suit for negligence

against the United States under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b),

2401(b), 2671-80, and for violation of Sanchez's civil rights against the Individual Defendants in

their individual capacities under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388

(1971). This motion concerns Plaintiffs' *Bivens* claims only.

Plaintiffs allege during the period of March 13 to March 15, 2015, Sanchez was suffering

from acute pancreatitis which went untreated, causing him to endure significant pain and

suffering before dying of the condition on March 15. According to Plaintiffs, members of the

MCC medical staff allegedly involved in Sanchez's care (Dr. Beaudouin, Dr. Bussanich, and

Mid-Level Practitioner ("MLP") Joaquin (together the "Medical Defendants")), were

deliberately indifferent to Sanchez's medical needs in that they provided grossly deficient

---

[1] In addition to the Individual Defendants, Plaintiffs named three other current or former BOP employees as *Bivens* defendants – Terrence Thomas, Rosalind Silvia, and Shaadiq Shakir. Because this Office is not currently authorized to represent these three defendants, the instant motion is brought on behalf of the Individual Defendants only. The analysis set forth below, *infra* 7-12, that Plaintiffs have no *Bivens* cause of action against the Individual Defendants, applies equally to the non-represented defendants as well.

medical care which did not alleviate Sanchez's painful symptoms. The remaining defendants – Shivers, Barraza, Holzendorf, Castillo, and Silva (the "Non-Medical Defendants"), all BOP officers – were allegedly deliberately indifferent to Sanchez's health and well-being as well. According to Plaintiffs, they did nothing to address Sanchez's apparent worsening painful symptoms which indicated that he was undergoing a medical emergency and needed immediate medical attention.

Plaintiffs' *Bivens* claims should be dismissed. As to the Individual Defendants, Plaintiffs' claims are foreclosed by recent Supreme Court precedent that has drastically limited the viability of *Bivens* claims. In addition, as to the Medical Defendants, Plaintiffs' allegations fail to state a *Bivens* claim as a matter of law. Medical treatment Sanchez received demonstrates that when Dr. Beaudouin saw him on March 13, Dr. Beaudouin developed a plan of treatment, thoroughly examined Sanchez, had imaging studies of Sanchez's abdomen conducted, prescribed medication, and arranged for Nurse Thomas to check on Sanchez. Dr. Beaudouin, Nurse Practitioner ("NP") Mitchell and Nurse Thomas thereafter were not made aware of Sanchez's alleged deteriorating health and had no further contact with him. Dr. Bussanich and MLP Joaquin had essentially no involvement in Sanchez's medical care on March 13 or thereafter. Rather, on the day Sanchez died, March 15, MLP Joaquin administered CPR in an effort to save Sanchez's life. They too were unaware of Sanchez's declining medical condition. Finally, the Medical Defendants are entitled to qualified immunity because the Second Amended Complaint fails to plausibly allege that the medical care provided was so deficient as to violate Sanchez's clearly established constitutional rights.[2]

---

[2] Although named in the prior complaints, NP Mitchell is not named in the Second Amended Complaint.

## BACKGROUND

### A. Allegations in the Second Amended Complaint

Sanchez arrived at MCC New York on January 28, 2015, pending charges in the U.S.

District Court for the Southern District of New York for Conspiracy to Import/Export Narcotics,

in violation of 21 U.S.C. § 963, and Conspiracy to Possess Firearms in Furtherance of Drug

Trafficking, in violation of 18 U.S.C. § 924. *See U.S. v. Sanchez*, 14 CR 0006 (S.D.N.Y.).

Sanchez had a medical intake screening on January 28, 2015, the day he arrived at MCC.

*See* SAC ¶¶ 64-65. That evaluation noted Sanchez had a history of hypertension, and a number

of medical tests were ordered. *Id.* ¶¶ 65, 67. Sanchez was taking the medication Enalapril and

aspirin for hypertension control. *Id.* ¶ 66. MCC medical staff kept Sanchez on aspirin but changed

his hypertension medication to Lisinopril. *Id.* ¶ 68. The next day, on January 29, 2015, a series of

actions were taken concerning Sanchez's medical care. Dr. Bussanich, Clinical Director of the

MCC, reviewed Sanchez's medical information, added him to the MCC's Hypertension Clinic,

*id.* ¶ 69, and reduced Sanchez's Lisinopril dosage from 40 to 20 mg, *id.* ¶ 71. Later that day, Dr.

Beaudouin changed the kinds of medical tests from those ordered on January 28. *Id.* ¶ 70.

A few days later, on February 3, Dr. Beaudouin examined Sanchez to assess his chronic

health conditions. *See* SAC ¶ 72. As part of his medical review, Dr. Beaudouin noted that

Sanchez had a history of chronic rhinitis and periodic headaches, in addition to his hypertension.

*Id.* ¶ 73. Dr. Beaudouin prescribed nasal congestion medication and, to assist with management

of Sanchez's hypertension, scheduled a chest X-ray. *Id.* ¶¶ 76, 78. Dr. Beaudouin scheduled

Sanchez's next chronic care visit for July 29, 2015. *Id.* ¶ 77. Dr. Beaudouin renewed Sanchez's

prescriptions for Lisinopril and aspirin. *Id.* ¶ 75. A second chest X-ray performed on March 2

had negative findings, and was reviewed by Dr. Bussanich on March 3. *Id.* ¶ 88.

On March 13, Sanchez was twice seen by MCC medical staff, at mid-morning and in the afternoon. *See* SAC ¶¶ 90, 99. He first presented to NP Tunesia Mitchell, with a chief complaint of abdominal pain, as well as nausea, vomiting and pain. *Id.* ¶¶ 89-90; Ex. 1 at 6-9.[3] Sanchez denied having diarrhea, fever or constipation. *See* Ex. 1 at 6. Sanchez told the clinicians he had a normal appetite that morning, but had not taken his blood pressure medication due to vomiting. *Id.* NP Mitchell took his vital signs. *Id.* at 6-7. NP Mitchell diagnosed Sanchez with reflux esophagitis, and prescribed a one-time dose of omeprazole, as well as acetaminophen and a seven day prescription for ranitidine. *See* SAC ¶ 91; Ex. 1 at 7-8. He was advised to refrain from eating chocolate, spicy food, and caffeine. *See* SAC ¶ 98; Ex. 1 at 8. Sanchez was instructed to alert MCC staff if he had bloody or black stool, fever, confusion, weakness, yellow or bloody vomit, or an increase in symptoms. *Id.*

Later that afternoon, Dr. Beaudouin followed-up with Sanchez. *See* SAC ¶ 99. Sanchez told Dr. Beaudouin the pain originally subsided after receiving medication but had since returned. *Id.* ¶¶ 99, 104; Ex. 1 at 3. Sanchez reported a normal bowel movement earlier in the day, and stated the pain did not increase with the movement. *See* SAC ¶ 100; Ex. 1 at 3. Dr. Beaudouin ordered an x-ray STAT, which showed no air fluid level and no dilated loops of bowels, but was positive for feces. *See* SAC ¶ 104; Ex. 1 at 4. Dr. Beaudouin diagnosed constipation and prescribed additional medications. *See* SAC ¶ 104; Ex. 1 at 4. Dr. Beaudouin instructed Sanchez to return to the MCC health center if his symptoms did not resolve. *Id.* Dr. Beaudouin also arranged for another member of the MCC medical staff, Nurse Thomas, to check on Sanchez later that day. *See* SAC ¶ 104. Allegedly, none of the MCC medical staff notified 11

---

[3] Exhibit 1 is attached to the Declaration of Brandon Cowart, dated April 7, 2023, submitted herewith.

South Housing Unit Officers that Sanchez would require immediate medical assistance if his condition worsened. *See* SAC ¶ 203.

During the following two days, March 14 and March 15, Sanchez's health allegedly worsened. According to Plaintiffs, Sanchez was in great pain, "screamed and complained loudly," SAC ¶ 105, visibly shaking, and frequently unable to lift himself from bed, *see id.* ¶ 109. Shivers, Barraza, Holzendorf, Castillo, and Silva (the "Non-Medical Defendants") allegedly were aware of Sanchez dire medical condition. *See* SAC ¶¶ 106, 109, 110. In the early morning of March 15, inmates allegedly contacted the 11 South Housing Unit Officers Barazza, Shakir, and Silvia, notifying them that Sanchez was having a medical emergency. *Id.* ¶ 111. According to Plaintiffs, they did not alert MCC medical staff. *Id.* ¶¶ 105, 106. Instead, they purportedly told Sanchez that he would need to wait until March 16, a Monday, because there was no doctor available before then. *Id.* ¶ 113.

On the morning of March 15, Sanchez collapsed and an emergency alert was sounded. *See* SAC ¶ 122; Ex. 1 at 1. Defendant Joaquin responded to the alarm and, upon arrival, observed that Sanchez was lying on his bed unresponsive. *See* SAC ¶¶ 122-123; Ex. 1 at 1. MLP Joaquin ordered that EMS be called and began giving Sanchez CPR. *See* SAC ¶¶ 124-125; Ex. 1 at 1. Sanchez was taken from the 11 South Housing Unit by stretcher and transferred to EMS which transported him to hospital. *See* SAC ¶ 126; Ex. 1 at 1. Sanchez allegedly died from necrotizing pancreatitis, with his other health problems as contributing factors. *See* SAC ¶ 131.

**B.  Procedural History**

Plaintiffs commenced this action on March 16, 2018. The operative pleading is the Second Amended Complaint, Dkt. No. 76, filed on December 2, 2022, which added as new defendants Thomas, Barraza, Holzendorf, Castillo, Shakir, Silva and Silvia. Plaintiffs assert four negligence-based causes of action against the United States under the FTCA: medical

malpractice (Count I); wrongful death and conscious pain and suffering (Count II); negligence

(Count III); and negligent supervision, hiring and retention (Count IV). In Count V, Plaintiffs

assert a cause of action against the Individual Defendants under *Bivens*, for allegedly violating

Sanchez's civil rights.

## ARGUMENT

### A.  Standard of Review

"Determining the existence of subject-matter jurisdiction is a threshold inquiry[,] and a

claim is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l*

*Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation

omitted). "[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . .

clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the

dispute." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citations and quotation

marks omitted). "In resolving a motion to dismiss under Rule 12(b)(1), a district court . . . may

refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

2000).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a

court must accept as true the well-pleaded allegations in the complaint and draw all reasonable

inferences in favor of the non-movant, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.*; *Hernandez v. United States*, 939

F.3d 191, 198 (2d Cir. 2019). Ultimately, the "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Throughout the Second Amended Complaint, Plaintiffs quote extensively from BOP medical records created on the morning of March 13;[4] the afternoon of March 13;[5] and the morning of March 15.[6] Although these records were not attached to the Second Amended Complaint, the Court may consider them on a motion to dismiss, because the records are incorporated by reference and Plaintiffs rely "'heavily upon [their] terms and effect,' which renders the document[s] 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co*., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents incorporated by reference in the complaint."); *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 44 (2d Cir. 2014) (on a motion to dismiss, "a court may consider . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit"). These MCC medical records are attached as Exhibit 1 of the Cowart Declaration.

## B. Plaintiffs' *Bivens* Claims Are Not Cognizable

In the Amended Complaint, Plaintiffs assert *Bivens* claims against the Individual Defendants for deliberate indifference to Sanchez's medical needs and well being in violation of

---

[4] *See* SAC ¶¶ 90-91, 93-96, 98.

[5] *See* SAC ¶¶ 99-102, 104, 107, 160.

[6] *See* SAC ¶¶ 123-124, 126-128.

the Due Process Clause of the Fifth Amendment.[7] As explained below, this claim is not viable under recent Supreme Court precedent.

*Bivens* is the "federal analog to suits brought against state officials under" 42 U.S.C. § 1983. *Iqbal*, 556 U.S. at 675. The theory is that the Constitution itself contains "an implied damages remedy" against federal actors for constitutional violations. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). Since the 1970s, however, the U.S. Supreme Court has recognized *Bivens* claims in only three contexts: (1) unreasonable search and seizure under the Fourth Amendment, *Bivens*, 403 U.S. 388; (2) sex-based employment discrimination under the Fifth Amendment's Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) deliberate indifference to a convicted prisoner's life-threatening medical needs under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). *See Komatsu v. United States*, No. 21 CV 1838, 2023 WL 317326, at *5 (S.D.N.Y. Jan. 19, 2023). The Supreme Court has since "emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity" and has "declined 11 times to imply a similar cause of action for other alleged constitutional violations." *Egbert v. Boule*, 142 S. Ct. 1793, 1799 (2022).

To decide whether a *Bivens* claim may proceed, courts must apply a "two-step test, which first asks '[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court,' meaning that it presents a new context, . . . and then asks if there are 'special factors counselling hesitation in the absence of affirmative action by Congress,' in which case a court should decline to extend *Bivens*." *Cohen v. United States*, 21 CV 10774, 2022 WL 16925984, at *5 (S.D.N.Y. Nov. 14, 2022) (quoting *Ziglar*, 137 S. Ct. at 1857). In *Egbert*, the

---

[7] The *Bivens* claims arise under the Fifth Amendment's guarantee of due process instead of the Eight Amendment's prohibition on the infliction of cruel and unusual punishment, because Sanchez was a pretrial detainee. *Infra* 9.

Supreme Court endorsed an "even narrower" test, stating that "'[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy.'" *Id.* (quoting *Egbert*, 142 S. Ct. at 1803). Post-*Egbert*, there is a clear default answer to this question: "in *most every case*," "the answer is 'Congress.'" *Egbert*, 142 S. Ct. at 1803 (emphasis added); *Cohen*, 2022 WL 16925984, at *6 (observing that *Egbert* "all but held that *no* case would ever be able to satisfy [the Supreme Court's] analytic framework" (emphasis in original)).

Plaintiffs' *Bivens* claim does not survive under the strict test announced in *Egbert*. In *Carlson*, the Supreme Court recognized a medical deliberate indifference claim in the Eighth Amendment context, specifically, its protection against Cruel and Unusual Punishments. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Here, however, Sanchez was a pretrial detainee in federal custody and, as such, his deliberate indifference claim arises under the Due Process Clause of the Fifth Amendment. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). The different source of civil right arises because pretrial detainees such as Sanchez "have not been convicted of a crime and thus 'may not be punished in any manner – neither cruelly and unusually nor otherwise.'" *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citation omitted). In *Egbert*, the Supreme Court made clear that a Fifth Amendment-based deliberate indifference claim necessarily presents new context, because "a new context arises when there is a new 'constitutional right at issue." *Egbert*, 142 S. Ct. at 1807 (quotation marks omitted).[8]

---

[8] Before *Egbert*, some district courts found that pretrial detainees' Fifth Amendment medical deliberate indifference claims did not present a new context given the similarities to Eighth Amendment deliberate indifference claims. *See, e.g.*, *Laurent v. Borecky*, 17 CV 3300, 2018 WL 2973386, at *5 (E.D.N.Y. June 12, 2018). This approach was controversial even before *Egbert*. *See Irizarry v. Manhattan Corr. Ctr.*, No. 21 CV 5170, 2021 WL 3668045, at *4 (S.D.N.Y. Aug. 17, 2021) (noting that it "is unclear whether a *Bivens* remedy" extends to pretrial detainees claiming deliberate indifference). After *Egbert*, however, there is no question that Fifth Amendment-based deliberate indifference claims present a new context. *See Choice v. Michalak*,

Indeed, a medical deliberate indifference claim is analyzed differently depending on the source of the protection, the Eighth Amendment or the Fifth Amendment. Analysis of either claim involves a two-part inquiry. The first part is the same for either right, that is, objectively, the condition of confinement poses an "'unreasonable risk of serious damage to [the inmate's] health.'" *Darnell*, 849 F.3d at 30 (citation omitted). The protections afforded by these Amendments, however, differ as to the second inquiry, which focuses on the official's *mens rea*. *Id.* at 32. The Eighth Amendment imposes a subjective standard: to be liable, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 32 (quoting *Farmer*, 511 U.S. at 837). In contrast, the Fifth Amendment applies an objective standard: the official need only "recklessly fail[] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. In short, the Eight Amendment and Due Process Clause of the Fifth Amendment "have different functions," in that the "language of the two Clauses differs, and the nature of the claims often differs." *Darnell,* 849 F.3d at 34.

The *Egbert* decision also forecloses Plaintiffs' other *Bivens* claim based on the Fifth Amendment besides alleged medical indifference. Specifically, Plaintiffs allege that the Fifth Amendment protects their "liberty and privacy interests in and/or rights to enjoy family integrity and stability" in their relationship with Sanchez, and their "interests in/rights to associate with" Sanchez, vis-à-vis their rights to "companionship, society, care and management of Sanchez."

---

21 CV 0060, 2022 WL 4079577, at *5, *5 n.7 (N.D. Ill. Sept. 6, 2022) (analyzing *Laurent* but concluding that "*Egbert*'s unequivocal statement that 'a new context arises when there is a new constitutional right at issue'" leaves no "leeway to conclude that two different constitutional rights present the same *Bivens* context" (quoting *Egbert*, 142 S. Ct. at 1807)).

SAC ¶ 198. These rights are not one of the three contexts in which the Supreme Court has recognized a *Bivens* claim and, therefore, under *Egbert*, give rise to no *Bivens* cause of action.

Under the second prong of the *Egbert* test, special factors counsel hesitation in recognizing a *Bivens* remedy in this case. If there is "*any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed,'" courts should not recognize a *Bivens* claim. *Egbert*, 142 S. Ct. at 1805 (emphasis in original). The availability of "alternative remedial structures" alone, "like any special factor, is reason enough" to reject a new *Bivens* action – even if other "remedies do not provide complete relief." *Id.* at 1804 (quotations omitted). Alternative remedial structures here include a federal lawsuit for negligence asserting a claim under the Federal Tort Claims Act. *See, e.g.*, *Johnson v. Santiago*, 20 CV 6345, 2022 WL 3643591 (E.D.N.Y. Aug. 24, 2022), at *5. Plaintiffs are asserting four causes of action against the United States under the FTCA. *Supra* 6.

Even absent these alternative remedies, separation-of-powers concerns also "weigh against a *Bivens* remedy, as 'the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches . . . , not the Judicial.'" *Schulte v. Bureau of Prisons*, 20 CV 2795, 2022 WL 1468017, at *4 (S.D.N.Y. May 10, 2022). Congress has legislated in the arena of prisoner's rights, including by passing the Prison Litigation Reform Act, but has never created a damages remedy against federal prison officials, which counsels against recognizing one here. *See Sabir v. Licon-Vitale*, 20 CV 1552, 2022 WL 1291731, at *8 (D. Conn. Apr. 29, 2022) (collecting cases). Further, "[r]ecognizing any new *Bivens* action 'entail[s] substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Egbert*, 142 S. Ct. at 1807 (citation omitted). "Federal employees 'face[d with] the added risk of personal liability for decisions that

they believe to be a correct response to improper [activity] would be deterred from' carrying out their duties." *Id.* (citation omitted). In short, there are several rational reasons to believe that Congress is better equipped to weigh the costs and benefits of recognizing a damages claim.

Because Plaintiff's *Bivens* medical deliberate indifference and family-based claims present a new context and because there is at least one special factor that counsels against creating a damages remedy, Plaintiffs' *Bivens* claims must be dismissed. This is reason enough to grant the Individual Defendants' motion in its entirety. As discussed below, the Amended Complaint also has several other fatal flaws requiring dismissal of the *Bivens* claims against the Medical Defendants.

### C. Plaintiffs Fail To State a *Bivens* Claim For Medical Deliberate Indifference

As noted above, to establish a medical deliberate indifferent claim under the Fifth Amendment Due Process clause, Plaintiffs must satisfy an objective condition – existence of an excessive risk to inmate health or safety; and a *mens rea* condition – the official recklessly failed to act with reasonable care in light of the risk. *Darnell*, 849 F.3d at 30, 36.

Assuming, *arguendo*, that Plaintiffs' pleadings satisfy the first condition, they have failed to plead that the Medical Defendants were "deliberately indifferent to [his] health or safety." *Farmer*, 511 U.S. at 834. The Medical Defendants' liability arises primarily through treatment Sanchez received on March 13. *See* SAC ¶¶ 89-131. As noted above, Sanchez was examined twice – by NP Mitchell and Dr. Beaudouin. *Supra* 4-5. Both of them diagnosed conditions other than acute pancreatitis, and prescribed Sanchez medication to treat those conditions. *Id.* Dr. Beaudouin ordered X-ray imaging of Sanchez's abdomen which showed no "air fluid level, no dilated loops of bowels." Ex. 1 at 4; *see also supra* 4. Both of them instructed Sanchez to contact a BOP officer if his condition worsened. *Supra* 4. The treatment Sanchez received undermines the notion that Dr. Beaudouin or NP Mitchell disregarded a serious risk to Sanchez's health. *See,*

*e.g., Washington v. The City of New York*, 10 CV 389, 2011 WL 566801, at *2 (S.D.N.Y. Feb. 15, 2011) ("Plaintiff was treated several times by doctors . . . and . . . was given a narcotic medication when he complained that his pain persisted. The treatment Plaintiff received reflects that the Defendants identified and responded to Plaintiff's injury and his complaints of pain."). Indeed, Plaintiffs allege that neither Dr. Beaudouin nor the other Medical Defendants were made aware of Sanchez's alleged declining health after Dr. Beaudouin's encounter with Sanchez on March 13. *See* SAC ¶ 105 (alleging that "between the afternoon or March 13, 2015[,] and [Sanchez's] death on March 15, 2015," . . . the Non-Medical Defendants "failed to inform health services as instructed by" Dr. Beaudouin if Sanchez's health condition worsened).

Plaintiffs appear to ground their deliberate indifference claim, in part, on disagreement with the medical diagnoses of NP Mitchell and Dr. Beaudouin. SAC ¶ 197 (alleging failure "to provide [Sanchez] with adequate medical care although they know or should have known that doing so posed an excessive risk to his health and safety"). But "[u]nsuccessful medical treatment alone does not give rise to [deliberate indifference] liability." *Gonzalez v. Sarreck*, 08 CV 3661, 2011 WL 5051341, at *18 (S.D.N.Y. Oct. 24, 2011); *see also Bryant v. Wright*, 451 F. App'x 12, 14 (2d Cir. 2011) (summary order) ("The bare allegation that the treatments have so far been unsuccessful is insufficient to state a claim for deliberate indifference."); *Hernandez v. Corizone Med. Dep't Staff*, 14 CV 192, 2015 WL 273690, at *3 (S.D.N.Y. Jan. 22, 2015) (rejecting deliberate indifference claim based on allegation that the plaintiff's "condition did not improve despite the treatment he received from doctors at Rikers Island").

Nor is deliberate indifference established by alleged failure of Dr. Beaudouin or NP Mitchell to determine the cause of Sanchez's abdominal pain, acute pancreatitis. Plaintiffs do not allege facts sufficient to show that this misdiagnosis was negligent, let alone reckless disregard

in the face of the risk of death.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Plaintiffs' attempts to hold Nurse Thomas, Dr. Bussanich and MLP Joaquin liable fail for the additional reason that the SAC fails to allege sufficient personal involvement. Liability under *Bivens* can arise only from each official's own conduct. A "plaintiff asserting a *Bivens* claim "must directly plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (internal quotation marks omitted); *see also Gottesfeld v. Anderson*, 18 CV 10836, 2020 WL 1082590, at *10 (S.D.N.Y. Mar. 6, 2020) ("'For individual liability to attach, *Bivens* defendants – even those in supervisory positions – must be personally involved such that through their own actions, they satisfy each element of the underlying constitutional tort." (internal quotation marks omitted)).

Plaintiffs' attempts to establish that Dr. Bussanich, Nurse Thomas, or MLP Joaquin were aware of Sanchez's alleged medical emergency fall far short of this standard. Plaintiffs do not allege that Dr. Bussanich or MLP Joaquin treated Sanchez on March 13. They do not allege – because they cannot – that Dr. Bussanich or MLP Joaquin saw Sanchez on March 14 or before he collapsed in the morning of March 15. Nor do Plaintiffs allege that Nurse Thomas failed to follow up with Sanchez on March 13. Rather, MLP Joaquin exhibited the opposite of indifference when he performed CPR on Sanchez in an attempt to save his life. *See* SAC ¶ 125.

Rather, Plaintiffs rely on vague allegations such as that Dr. Bussanich should have been carefully monitoring Sanchez for potential pancreatitis given his hypertension and treatment regimen. *See* SAC ¶¶ 145-146. Plainly, being aware that an inmate <u>may</u> develop acute pancreatitis does not signify awareness that an inmate has in fact developed the condition.

**D. The *Bivens* Claims Against the Medical Defendants Are Barred by the Doctrine of Qualified Immunity**

Plaintiffs' *Bivens* claims against the Medical Defendants fail for the additional reason that these defendants are entitled to qualified immunity from suit. The doctrine of qualified immunity "entitles public officials to freedom from suit for acts undertaken in their official capacity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Martinez v. Simonetti*, 202 F.3d 625, 633-34 (2d Cir. 2000) (internal quotation marks omitted). The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted). Furthermore, qualified immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter*, 502 U.S. at 227 (citing cases).

To determine whether an official is immune from suit, "the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his or her actions were] lawful, in light of clearly established law and the information the officer[] possessed." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). A court analyzes whether "the facts, viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011) (internal quotation marks and brackets omitted). "If the plaintiff has satisfied that part, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (brackets omitted)); *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007). "If the conduct did not violate a clearly established constitutional right, or if it

was objectively reasonable for the official to believe that his conduct did not violate such a right, then the official is protected by qualified immunity." *Doninger*, 642 F.3d at 345 (quoting *Gilles*, 511 F.3d at 244) (brackets and internal quotation marks omitted).

For the reasons discussed above, Plaintiffs have failed to allege that any of the Medical Defendants violated a clearly established constitutional right as to the medical care provided to Sanchez. Therefore, the Medical Defendants are entitled to qualified immunity with regard to Plaintiffs' *Bivens* claims against them. ¶

## CONCLUSION

For these reasons, the Individual Defendants respectfully request that the Court dismiss the claims asserted against them in Second Amended Complaint for failure to state a claim upon which relieve may be granted and for qualified immunity.

Dated:    New York, New York
          April 7, 2023

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Counsel for the Individual
Defendants*


By:   /s/ *Brandon Cowart*
      BRANDON H. COWART
      Assistant United States Attorney
      86 Chambers Street, 3rd Floor
      New York, New York 10007
      Telephone: (212) 637-2693
      Facsimile: (212) 637-2702