# EXHIBIT 3

# GEORGE DECLARATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH MARK BURTON as the Administrator of the Estate of FRANKLIN RAMOS SANCHEZ, MADGA LILIANA MARTINEZ ACOSTA, Indivisually and as m/n/g of F.N.R.M., an Infant, and FRANCY TATIANA RAMOS MARTINEZ,<br>       Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; ANTHONY BUSSANICH, M.D., ROBERT BEAUDOUIN, M.D., YSMAEL JOAQUIN, MLP, NURSE TERRANCE THOMSA, OPERATIONS LIEUTENANT KIMBERLY SHIVERS, OPERATIONS LIEUTENANT LORENZO BARRAZA, HOUSING UNIT OFFICER QUENTIN HOLZENDORF, HOUSING UNIT OFFICER GERALD CASTILLO, HOUSING UNIT OFFICER SHAADIQ SHAKIR, HOUSING UNIT OFFICER ROSALIND SILVIA, SENIOR OFFICER WILSON SILVA, BOP JOHN DOE SUPERVISOR 1, BOP JOHN DOE SUPERVISON 2, JON/JANE DOES Nos. 1-5,<br>       Defendants. | Case No. 18 CV 2039 (JHR) |

**DECLARATION OF LINDSEY GEORGE**

      I, Lindsey George, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

      1.     I am currently employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP"), as the Chief of the Records and Information Management ("RIM") Office in BOP's Central Office. I have held this position since February 2014, and I have been employed with the BOP since 1989.

**Relevant Records Retention Policy**

2.  The RIM Office is responsible for guiding BOP staff in the creation, maintenance, and archiving of all agency records to ensure compliance with federal regulations and policies. The RIM Office issues guidance intended to establish best practices and proper instructions for records and information management methods.

3.  A record includes all recorded information, regardless of form or characteristics, made or received by an agency of the United States Government under federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value in them. *See* 44 U.S.C. § 3301.

4.  Records are categorized as temporary or permanent. A temporary record is a record approved by the National Archives and Records Administration ("NARA") for final disposal after a specified retention period. A permanent record is transferred to and preserved by NARA. A record series is a group of records, whether temporary or permanent, arranged together because they relate to a particular subject or function, result from the same activity, document a specific type of transaction, exist in the same media format, or have some other type of relationship.

5.  Scheduling is the process of determining and recording the appropriate retention period and ultimate disposition of a record series. Once NARA approves a records schedule, the records are called "scheduled records." There are two types of schedules in the BOP: 1) a Request for Records Disposition Authority that has been approved by NARA to authorize the disposition of federal records (typically associated with agency-specific records); and 2) a

General Records Schedule issued by NARA (typically associated with common government records).

6. One identified records series within the BOP is video surveillance recording at federal correctional facilities. On approximately June 1, 2010, an Information Management Officer in the RIM Office submitted a Request for Records Disposition Authority to NARA, seeking authorization to delete video content not deemed to contain a case related or category related event, as identified by BOP's Special Investigative Service Department, ten days after recording. On August 9, 2011, NARA approved the Request. A true and accurate copy of the Request for Records Disposition Authority No. N1-129-10-2 is attached hereto as *Exhibit A*.

7. The retention period for video surveillance recording at federal correctional facilities has not changed, and such records are supposed to be destroyed ten days after recording.

8. BOP institutions store video surveillance footage on an internal local server. The video cameras are constantly recording, seven days per week, twenty-four hours per day. The system automatically deletes information to provide storage room for new material; in short, old footage automatically replaces new footage.

**Preservation and Search Efforts**

9. On March 19, 2015, the Supervisory Attorney at MCC New York sent an email to staff members whom he believed might have information relevant to future litigation or inquiries regarding Mr. Sanchez's death.[1] Specifically, the email directed the staff members to "review your paper files and computer files for anything related to [Sanchez]." A true and accurate copy

---

[1] Sanchez was a citizen of Columbia. It would not have been unusual for the Columbian Consulate in New York City to have inquired about the circumstances surrounding his death.

3

of this email is attached hereto as **Exhibit B**. The attachment referenced in the email advised the staff members to preserve any such information they found.

10. Generally, an institution's SIS Department is overseen by a Special Investigative Agent ("SIA"). MCC New York did not have an SIA in March 2015. The previous SIA retired prior to Sanchez's death, and the new SIA did not start until May 2015. Accordingly, the SIS Department consisted of rotating Lieutenants and one or two SIS Technicians. The Supervisory Attorney's email included the relevant Lieutenants, but it did not include the SIS Technicians.

11. Despite the litigation hold being sent within the ten-day window, the Supervisory Attorney and the Staff Attorney at MCC New York inadvertently failed to confirm with SIS that relevant video footage had been preserved.

12. On March 13, 2017, BOP received administrative tort claims individually filed by each Plaintiff alleging the BOP exhibited "gross negligence, medical malpractice, negligent hiring/training/supervision, and deliberate indifference" in relation to Sanchez's death.

13. Around the same time, in late March or early April of 2017, BOP received a complaint filed by Plaintiffs in the Supreme Court of the State of New York. The United States Attorney's Office for the Southern District of New York filed a Notice of Removal, and the parties stipulated and agreed to a dismissal without prejudice for lack of administrative exhaustion. *See* 17-CV-03204 (S.D.N.Y.).

14. On March 6, 2018, Plaintiffs filed the instant case in the U.S. District Court for the Southern District of New York. *See* ECF No. 1. Plaintiffs filed an amended complaint on March 13, 2018. *See* ECF No. 16. On June 11, 2018, Defendants answered the amended complaint. *See* ECF Nos. 21-26.

15. In October of 2018, BOP agency counsel received Plaintiffs' First Set of Interrogatories to Defendants. These interrogatories were largely focused on Plaintiffs' efforts to obtain the identities of various John/Jane Doe staff members and inmate witnesses. Defendants responded to the discovery requests on July 3, 2019.

16. At some point between March 2017 (when the original complaint and administrative tort claims were received) and July 2019 (when the First Set of Interrogatories were answered), BOP agency counsel asked the SIS Department at MCC New York to look for relevant video footage from March 15, 2015, as it was supposed to have been preserved. The SIS Department informed agency counsel that there was no video footage from that date.

17. In December of 2019, BOP agency counsel received Plaintiffs' Second Set of Interrogatories and First Demand for Documents. The requested documents included video recordings depicting Sanchez and/or any BOP employee's interaction with him from March 13, 2015, to March 15, 2015.

18. BOP agency counsel asked MCC New York's then-SIA to double check whether any video footage had been preserved from March 15, 2015. A true and accurate copy of that email is attached hereto as **Exhibit C**. In a phone conversation, the SIA advised that no footage appeared to have been saved.

19. On August 10, 2020, Defendants responded to Plaintiffs' Second Set of Interrogatories and First Demand for Documents indicating they had no video recordings depicting Sanchez.

20. When MCC New York closed, any information stored on its local internal server, including preserved video surveillance footage, was transferred to the RIM Office or the Regional Computer Services Coordinator at the BOP's Northeast Regional Office. Subsequent

searches for video footage from March 15, 2015, were done by the Regional Computer Services Coordinator and the RIM office with no results. Accordingly, any video footage that existed from MCC New York's video surveillance system relevant to this case was most likely destroyed in the ordinary course of business in accordance with the NARA-approved Request for Records Disposition Authority No. N1-129-10-2.

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this _1st__ day of November 2023.

                                                                                  _____
                                                                                   Lindsey George
                                                                                   Chief, RIM Office
                                                                                   Washington, D.C.