

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

86 Chambers Street
New York, New York 10007

August 5, 2024

**By ECF**
Hon. Stewart D. Aaron
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY  10007

      Re:    *Burton v. United States*, Case No. 18 CV 2039 (JHR) (SDA)

Dear Judge Aaron:

      This Office represents defendant the United States, sued under the Federal Tort Claims Act, and defendants Anthony Bussanich, Robert Beaudouin, Ysmael Joaquin, Kimberly Shivers, Lorenzo Barazza, Gerald Castillo, Wilson Silva, Quentin Holzendorf, Terrence Thomas, Rosalind Silvia, and Shaadiq Shakir, all current or former employees of the Bureau of Prisons ("BOP"), sued in their individual capacity under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) (the "*Bivens* defendants"). The case arises from the death of Franklin Sanchez, a Colombian national extradited to the United States on criminal charges who died while in custody at the Metropolitan Correctional Center in New York City ("MCC") in March 2015. This matter is before Your Honor for all general pretrial matters.

      We write regarding certain issues raised in Plaintiffs' letter to the Court dated July 29, 2024, which requests a pre-motion conference in advance of "Plaintiff's motion to compel the name(s) of the BOP employee(s) responsible for implementing the litigation hold at MCC and for preserving" potentially relevant emails, phone call records, and video, and also requests an order extending discovery for the purpose of allowing Plaintiffs to depose the individuals who received notice of the litigation hold. (ECF No. 154.) As to Plaintiffs' request for names, the Government's understanding is that Plaintiffs are particularly interested in the individuals responsible for retaining potentially relevant housing unit video on the date of the litigation hold (March 19, 2015). To determine that information, the Government reviewed the MCC duty roster from March 19, 2015, and interviewed current and former BOP staff. On Friday, August 2, 2024, we provided Plaintiffs with the names of the two current and two former BOP employees who were responsible for saving video footage from the relevant MCC surveillance cameras on March 19, 2015. We therefore believe that Plaintiffs' request for additional information has been satisfied, and we have been attempting to schedule a meet and confer this week to determine what, if any, additional information Plaintiffs are seeking.

      We hope the meet and confer process will also illuminate which individuals, specifically, Plaintiffs are requesting to depose so that the Government can consider that request. To the

extent Plaintiffs are seeking to reopen depositions of individuals who have already been deposed, they have not stated any basis to do so, as Plaintiffs already had the opportunity to ask each of the deponents about document retention. Further, Plaintiffs have not pointed to deficiencies in the Government's retention of relevant electronically stored information ("ESI") other than the housing unit video. Further discovery into retention of other forms of ESI is therefore inappropriate.

With respect to retention of the housing unit video, as the Court is aware, Mr. Sanchez died on March 15, 2015, and on March 19, 2015, the Supervisory Attorney at MCC New York sent a litigation hold via email to staff members whom he believed might have information relevant to Mr. Sanchez's death. This litigation hold advised the recipients to preserve "electronically stored information," but it did not specifically mention surveillance video footage nor the housing unit surveillance video.

The Special Investigative Services ("SIS") Department typically handles preservation of surveillance video primarily in the context of SIS investigations involving criminal activity or BOP officers' use of force. The recipients of the Supervisory Attorney's email included MCC staff who responded to Mr. Sanchez's medical emergency in Housing Unit 11 South, two Lieutenants working in the SIS Department, and several high-level officials at the MCC (the Captain, the Associate Warden, and the Warden, none of whom were involved in responding to the medical emergency). The email did not include the two SIS Technicians in the department who typically preserve video surveillance footage. It appears that the surveillance video was not copied and preserved prior to the automatic deletion period. And, as Mr. Sanchez's death did not involve criminal wrongdoing, there was no SIS investigation.

In late March or early April of 2017, BOP received administrative tort claims individually filed by each Plaintiff, as well as a complaint Plaintiffs filed in the Supreme Court of the State of New York. Approximately one year later, Plaintiffs filed the instant case in the Southern District of New York. At some point, BOP agency counsel asked the SIS Department at MCC New York to confirm whether the video surveillance footage from March 15, 2015, had been preserved. The SIS Department informed agency counsel that there was no video footage from that date. On March 4, 2020, BOP agency counsel asked MCC New York's then-Special Investigative Agent to double-check whether any video surveillance footage existed from March 15, 2015. The Special Investigative Agent advised there was no video footage from that date. After MCC New York closed, BOP agency counsel asked the Northeast Regional Computer Services Coordinator and the Northeast Regional Correctional Programs Division to check any files and/or drives received from MCC New York. Again, agency counsel was told there was no video footage in any of the files/drives from March 15, 2015.

Defendants disclosed that the video footage at issue had not been kept by the two storage methods available to the MCC – specific instructions to relevant staff via litigation hold or as part of an SIS investigation – and why this occurred, by sending Plaintiff by FedEx two declarations in November 2023. Specifically, Lindsey George, the BOP's Chief of Records and Information Management, executed a declaration dated November 1, 2023, in which she disclosed that a litigation hold had been put in place and that video surveillance footage of Housing Unit 11 South had not been preserved as part of this hold. (Defendants also produced Ms. George as a Rule 30(b)(6) witness concerning document preservation.) The second declaration, dated November 14, 2023, was prepared by Anthony Pedone, the Special

Investigative Agent who oversaw the MCC's SIS office from May 2015 to April 2019. Mr. Pedone explained that because there had been no criminal conduct, as a matter of course, no video footage of Housing Unit 11 South had been preserved.

      Plaintiffs complain that the litigation hold sent from agency counsel to certain staff was not produced in Defendants' August 2020 response to Plaintiffs' document requests, although allegedly encompassed within their requests. But, in general, discovery into litigation holds is not permitted without specific reason. *See Franck v. New York Health Care Inc*., 21 CV 4955, 2022 WL 471333, at *2 (S.D.N.Y. Feb. 16, 2022). In any event, Plaintiffs do not seem to be asserting that the litigation hold notice was insufficient.

      We thank you for your consideration of this matter.

          Respectfully,

          DAMIAN WILLIAMS
          United States Attorney for the
          Southern District of New York

      By:   /s/ Brandon Cowart
          BRANDON H. COWART
          Assistant United States Attorney
          Telephone: (212) 637-2693
          E-mail: brandon.cowart@usdoj.gov

cc:    By ECF
       Plaintiffs' Counsel